IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WILLIAM DENTON WOODS, TDCJ #654317, | § § § | |
| Plaintiff, | § § § | |
| v. | § § | CIVIL ACTION NO. H-11-1131 |
| DIRECTOR'S REVIEW COMMITTEE, *et al.*, | § § § § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

The plaintiff, William Denton Woods (TDCJ #654317), is an inmate incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division (collectively, "TDCJ"). Woods has filed a civil rights complaint under 42 U.S.C. § 1983, alleging that he was wrongfully denied correspondence that contained "sexually provocative" photographs. The defendants (TDCJ Director Brad Livingston and Prison Mailroom Supervisor Nancy Alger) have filed a motion for summary judgment [Doc. # 20]. Woods has filed a response [Doc. # 22]. After considering all of the pleadings, the evidence, and the applicable law, the Court grants the defendants' motion and dismisses this case for the reasons that follow.

**I. BACKGROUND**

Woods, who is incarcerated at the Wynne Unit in Huntsville, Texas, complains that the Unit Mailroom Supervisor (Officer Alger) refused to allow him to receive correspondence which, according to Woods, contained twenty "photographs of scantily clad

females in sexually provocative poses" [Doc. # 8, at 1]. Woods explains that he purchased the photographs from a "pen pal" business called "South Beach Singles," in Miami, Florida. Woods attached to his more definite statement two brochures that contain miniature versions of the selection of photographs that he ordered [Doc. # 8-4 - sealed]. The Clerk's Office has restricted public access to the brochures because of their explicit sexual content.

Woods claims that Officer Alger "unfairly denied" him the photographs because they were "altered" and therefore violated the TDCJ Correspondence Rules. Woods appealed Officer Alger's decision to the "Director's Review Committee," which was established to hear prisoner grievances about the TDCJ Correspondence Rules. The Director's Review Committee upheld Officer Alger's decision, but for a different reason. The Director's Review Committee found that Woods was not entitled to the photographs under a provision found in the Correspondence Rules that prohibits inmates from receiving "sexually explicit" images in the mail.

Although Woods acknowledges that the TDCJ Correspondence Rules prohibit "sexually explicit images" that feature "frontal nudity," including "exposed female breasts," or genitalia of either gender, he asserts that the correspondence was wrongfully denied because the photographs that he ordered were "photo-shopped" or blurred in such a way as to disguise or "cover up any exposed nudity." Accordingly, Woods maintains that the digitally altered photographs were not so sexually explicit that they violated the TDCJ Correspondence Rules. As relief in this case, Woods requests the pictures that he ordered and the costs of this suit.

2

The court ordered the defendants to answer the complaint, and the defendants moved to dismiss on the grounds that Woods had failed to exhaust available administrative remedies as required by 42 U.S.C. § 1997e(a), with respect to his claims. The court denied the motion, without prejudice, and granted the defendants sixty days in which to file either an amended motion to dismiss or a motion for summary judgment [Doc. # 19]. The defendants have filed a motion for summary judgment [Doc. # 20] in which they argue: (1) Livingston had no personal involvement in the alleged constitutional violation; (2) both Livingston and Alger are entitled to qualified immunity;(3) the blurred pornography was properly withheld from Woods; and (4) the defendants are entitled to immunity under the Eleventh Amendment.

## II.   STANDARD OF REVIEW

The defendants' motion is governed by Rule 56 of the Federal Rules of Civil Procedure, which mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002). In that respect, a reviewing court must determine whether the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2); *Celotex Corp.*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

For summary judgment, the initial burden falls on the movant to identify areas essential to the nonmovant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The moving party, however, need not negate the elements of the non-movant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The moving party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'" *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir. 1992)).

If the moving party meets its initial burden, the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted). The nonmovant must do more than simply show that there is some "metaphysical doubt" as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted). In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co.*, 478 U.S. at 587-88; *see also Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). However, factual controversies are resolved in favor of the

non-movant "only 'when both parties have submitted evidence of contradictory facts.'" *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004) (quoting *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir. 1999)).

The plaintiff proceeds *pro se* in this case. Courts construe pleadings filed by *pro se* litigants under a less stringent standard than those drafted by attorneys. *See Haines v. Kerner*, 404 U.S. 519 (1972); *Bledsue v. Johnson*, 188 F.3d 250, 255 (5th Cir. 1999). Pleadings filed by a *pro se* litigant are entitled to a liberal construction that affords all reasonable inferences which can be drawn from them. *See Haines*, 404 U.S. at 521; *see also United States v. Pena*, 122 F.3d 3, 4 (5th Cir. 1997) (citing *Nerren v. Livingston Police Dept.*, 84 F.3d 469, 473 & n.16 (5th Cir. 1996)). Nevertheless, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary-judgment motion. *See Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992).

### III.   DISCUSSION

**A. No Showing of Personal Involvement - Brad Livingston**

Woods names TDCJ Director Brad Livingston as a defendant; however, he does not present any facts which indicate how or if Livingston was personally involved in the alleged denial of blurry pornography. To assert a claim under section 1983, a plaintiff must (1)

allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *Moore v. Willis Independent School Dist.*, 233 F.3d 871, 874 (5th Cir. 2000), *citing Lefall v. Dallas Independent School District*, 28 F.3d 521, 525 (5th Cir. 1994). To state a claim against a defendant in his individual capacity, there must be a showing of personal involvement. *Anderson v. Pasadena Independent School Dist.*, 184 F.3d 439, 443 (5th Cir. 1999). Naming a person who had no direct contact with the plaintiff will not suffice even if that person is alleged to have supervisory authority over other officials who may have had some interaction with the plaintiff. *Id*. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1948 (2009) Woods fails to assert a claim against Livingston because he has not identified any overt act by Livingston or policy implemented by Livingston which resulted in a constitutional deprivation. *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011). Therefore, Livingston shall be dismissed from this proceeding because there are no allegations or facts showing that he was involved in any violation of Woods's constitutional rights. *Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 425 (5th Cir. 2006).

### B. Qualified Immunity

Both Alger and Livingston have asserted the affirmative defense of qualified immunity in their motion for summary judgment which alters the burden of proof in a summary judgment proceeding. *See Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).

Woods now must negate the qualified immunity defense. *Id.* "The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Morgan v. Swanson,* 659 F.3d 359, 370 (5th Cir. 2011). It protects "all but the plainly incompetent or those who knowingly violate the law." *Id., quoting Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096 (1986). Accordingly, the court will determine: (1) whether Woods has presented or alleged facts which establish a violation of a constitutional right, and (2) whether that right was "clearly established" at the time of the alleged misconduct. *Ontiveros v. City of Rosenberg, Tex.*, 564 F.3d 379, 382 (5th Cir. 2009). *See also Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009); *Simmons v. City of Paris, Tex.*, 378 F.3d 476, 479 (5th Cir. 2004), *citing Glenn v. City of Tyler*, 242 F.3d 307, 312 (5th Cir. 2001). The defendants are entitled to qualified immunity unless their conduct violated a clearly established constitutional right. *Id. See also Morgan*, 659 F.3d at 371-372. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039 (1987).

Woods contends that the defendants have denied him the right to possess and view photographs that were made and sold for their sexual content. The TDCJ Board has promulgated a policy regarding prisoner correspondence, BP-03.91 [Doc. # 20-1 at pages 3-15]. The policy contains language addressing the receipt of sexually explicit materials. *Id.* at 11, 13. The policy unequivocally states that all incoming correspondence, including photographs, shall be disapproved for receipt if it contains a "sexually explicit image". *Id.*

7

at 11.  It also states that a publication may be rejected because "it contains sexually explicit images."  *Id.* at 13.   The TDCJ Correspondence Rules evolved after a lengthy class action lawsuit regarding restrictions on inmate mail.  *See Guajardo v. Estelle*, 432 F. Supp. 1373 (S.D. Tex. 1977).  The district court's decision was affirmed in part and reversed in part by the Fifth Circuit which held that prison administrators may ban sexually explicit publications including materials which were not judicially declared to be obscene.  *Guajardo v. Estelle*, 580 F.2d 748, 761-62 (5th Cir. 1978).  The Correspondence Rules were established under a settlement agreement that was approved in this district.  *See Guajardo v. Estelle*, 568 F. Supp. 1354, 1364 (S.D. Tex. 1983).  TDCJ's policy of screening and  governing sexually oriented materials had been upheld by the United States Court of Appeals for the Fifth Circuit.  *Thompson v. Patterson*, 985 F.2d 202, 206 (5th Cir. 1993), *citing Guarjardo v. Estelle*, 540 F.2d 748 (5th Cir. 1978).  Specifically, the Fifth Circuit found that TDCJ could withhold sexually oriented materials from inmates on the basis that the materials were detrimental to the inmates' rehabilitation as well as the order and stability of the prisons.  *Id.*

Woods contends that he should be allowed to have the pictures because certain parts have been photo-shopped; however, he does not deny their sexual content.  He does not cite any cases in which  prison officials were held to have violated a prisoner's rights by withholding blurred images.  To defeat the defendants' defense of qualified immunity, Woods must show that the complained of behavior was so clearly proscribed that any official would have known it was a violation of the law.  *Morgan*, 659 F.3d at 371-372.  Under *Thompson* and *Guajardo*, a prison official could have determined that withholding the

images was permissible. Having found no clear statement which specifically prohibits the confiscation of blurred pornography, the Court concludes that the defendants are entitled to qualified immunity. *Id.*

### C. Denial of Pornography - Nancy Alger

Alger contends that the withholding of the photographs was proper and was not a constitutional violation. Although prisoners do have First Amendment rights to receive publications, their rights are limited by the legitimate objectives and needs of the prison systems in which they are incarcerated. *Shaw v. Murphy*, 532 U.S. 223, 229, 121 S.Ct. 1475, 1479 (2001), *citing Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800 (1974). As noted in the previous section, prison officials are authorized to screen incoming mail and remove items which contain explicit sexual content. *Thompson*, 985 F.2d at 207. Moreover, the officials are accorded some discretion in determining which materials are acceptable. *Beard v. Banks,* 548 U.S. 521, 528, 126 S.Ct. 2572, 2577 - 2578 (2006) To do otherwise would possibly result in more rigid restrictions against incoming materials. *Thornborough v. Abbott*, 490 U.S. 401, 417 n.15, 109 S.Ct. 1874, 1883 n.15 (1989).

As Woods concedes, Board Policy 03.91 of the TDCJ Correspondence Rules prohibits receipt of sexually explicit publications or images. *See Moore v. Dretke*, Civil No. H-05-0213, 2006 WL 1663758, *4 (S.D. Tex. June 14, 2006) (explaining that, as of June 1, 2004, offenders are no longer permitted to receive sexually explicit photographs, among other things, in the mail). The intent of Board Provision 03.91 "is to encourage a rehabilitative environment for offenders and to discourage sexual harassment of staff." *Id*.; *see also Mauro*

*v. Arpaio*, 188 F.3d 1054, 1059 (9th Cir. 1999) (recognizing that, in addition to the legitimate interests in rehabilitation and security, the prohibition of sexually explicit materials also protects the safety of correctional officers in general and reduces sexual harassment of female officers employed at the prison).

Woods admits that he was aware of the policy against sexually oriented materials, but he contends that the images he bought should not have been banned because they were photo-shopped. To avoid becoming hopelessly entangled in the day-to-day affairs of the prisons, the courts generally defer to the prison administrators' judgment in determining whether a publication or picture is suitable for inmate correspondence. *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 2262 (1987). With this in mind, the court has examined the brochures submitted by Woods [Doc. # 8-4 - sealed]. Without going into a detailed description of the images in the brochures, the court notes that most of the photographs depict female nudes or partial nudes whose poses feature their genitalia. In short, the pictures are a clear appeal to the prurient interest in sex despite Woods's insistence that the sexual organs are supposed to be covered. There is no disagreement that Woods purchased the images for their erotic content, and it is equally clear that some individuals might consider them to be sexually obscene. *See Miller v. California,* 413 U.S. 15, 24, 93 S.Ct. 2607, 2615 (1973); *Ginzburg v. United States*, 383 U.S. 463, 471, 86 S.Ct. 942, 947-48 (1966). There is also no question that Alger, or any other official involved in the censorship process, was authorized to withhold the photographs and that the denial of the photographs was not a constitutional violation. *Thompson*, 985 F.2d at 206. Therefore, Alger is entitled to be

dismissed from this action because there is no evidence showing that she violated Woods's constitutional rights.

### D. Eleventh Amendment

The defendants have asserted immunity under the Eleventh Amendment against claims made against them in their official capacities. Such claims are actually suits against the governmental entities who employ the defendants. *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105 (1985). The defendants have correctly stated that the Eleventh Amendment bars any monetary claims brought against them in their official capacities. *Cozzo v. Tangipahoa Parish Council--President Government*, 279 F.3d 273, 280-81 (5th Cir. 2002); *Oliver v. Scott* 276 F.3d 736, 742 (5th Cir. 2002). However, the Eleventh Amendment does not bar suits for injunctive relief. *Meza v. Livingston*, 607 F.3d 392, 412 (5th Cir.2010). *See also Union Pacific R. Co. v. Louisiana Public Service Com'n*, 662 F.3d 336, 340 n.5 (5th Cir. 2011). To prevail in an official capacity suit, Woods must show that the government entity is the moving force behind the violation. 105 S.Ct. 3099, 3105 To do so, Woods must identify: (1) a policy (2) of the policy maker (3) that caused (4) the plaintiff to be subjected to a deprivation of his constitutional rights. *Grandstaff v. City of Borger*, 767 F.2d 161, 169 (5th Cir. 1985). At the least, the plaintiff must present specific facts showing a pattern of violations in order to prevail on a claim against a defendant in his official capacity. *Spiller v. City of Texas City*, 130 F.3d 162, 167 (5th Cir. 1997); *Frare v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992). First, Woods has only identified an isolated incident. Such facts do not support an official capacity claim under § 1983. *City of Oklahoma City*

*v. Tuttle*, 105 S.Ct. 2427, 2436 (1985); *Bigford v. Taylor*, 834 F.2d 1213, 1220 (5th Cir. 1988). Of greater significance is the fact that the policy behind the withholding of the photographs has been upheld by the courts. Therefore, any official capacity claims are subject to dismissal because Woods has failed to present any evidence of a policy which denied him his constitutional rights.

The defendants presented evidence clearly demonstrating that there is no genuine issue of dispute regarding the withholding of the photographs that Woods purchased. No constitutional violation occurred. The motion for summary judgment [Doc. # 20] shall be granted, and this action shall be dismissed under FED. R. CIV. P. 56.

## IV. CONCLUSION AND ORDER

Based on the foregoing, the Court **ORDERS** as follows:

1. The defendants' motion for summary judgment [Doc. # 20] is **GRANTED**.

2. The prisoner civil rights complaint is **DISMISSED** with prejudice.

The Clerk shall provide a copy of this order to the parties.

SIGNED at Houston, Texas, on March 30, 2012.

Nancy F. Atlas
United States District Judge